**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RODNEY WILLIAMS,

Plaintiff,

- v -                                                   Civ. No. 9:15-CV-0988
                                                              (GTS/DJS)

CASIMO FERRARI, *Physician, Bare Hill*
*Correctional Facility formerly known as*
Farrari Casimo,

Defendant.

**APPEARANCES:**                         **OF COUNSEL:**

RODNEY WILLIAMS
Plaintiff, *Pro Se*
10-A-3938
Gouverneur Correctional Facility
112 Scotch Settlement Road
P.O. Box 370
Gouverneur, New York 13642-0370

HON. ERIC T. SCHNEIDERMAN          DENISE P. BUCKLEY, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

*Pro se* Plaintiff Rodney Williams brings this civil rights action, pursuant to 42 U.S.C.

§ 1983, alleging that Defendant was deliberately indifferent to his serious medical needs in

violation of the Eighth Amendment.   Dkt. No. 69, Am. Compl.   On March 2, 2017,

Defendant filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(a). Dkt. No. 106. Plaintiff opposed the Motion and Defendant filed a Reply. Dkt. Nos. 113 & 118. For the reasons that follow, the Court recommends **granting** Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Except where otherwise noted, the following material facts are undisputed.[1] The relevant events arise from Plaintiff's claim that Defendant denied him adequate medical treatment for his shoulder pain while he was housed at Bare Hill Correctional Facility ("Bare Hill C.F.") in the custody of the New York Department of Corrections and Community Supervision ("DOCCS").

From September 2010 until September 2016, Plaintiff was incarcerated at Bare Hill C.F. Dkt. No. 106-18, Buckley Decl., pp. 3-4. Defendant was employed as a Clinical Physician II at Bare Hill C.F. and was responsible for overseeing Plaintiff's medical care until he retired in October 2015. Dkt. No. 106-19, Ferrari Decl, ¶ 3. One month prior to arriving at Bare Hill C.F., Plaintiff underwent a Health Screen at Downstate C.F. Dkt. No.

---

[1] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id*. While Plaintiff's Counter-Statement of Material Facts is not supported by proper record citations, *see* Dkt. No. 113-1, in deference to Plaintiff's pro se status the Court has opted to review the entire summary judgment record in order to ascertain the undisputed material facts. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

107, Pl.'s Med. Rec., pp. 36-37.[2]  The nurse noted that Plaintiff complained of arthritis in both shoulders.  *Id.*  When Plaintiff arrived at Bare Hill C.F., Plaintiff complained of shoulder pain.  Pl.'s Med. Rec., p. 33.

From September 2010 until March 2012, Plaintiff received treatment from the medical staff at Bare Hill C.F. for various complaints including foot pain, vision problems, nasal congestion, and for injuries sustained in an altercation with another inmate.  Pl.'s Med. Rec., pp. 339-347.  On September 8, 2010, Plaintiff complained of nasal congestion and requested eyeglasses, over-the-counter lotion, and a bottom bunk.  Pl.'s Med. Rec., p. 347.  Regarding the bottom bunk, the Ambulatory Health Record ("AHR") indicates, "no criteria noted in chart."  *Id.*

On March 8, 2012, Plaintiff attended sick call complaining of "continuous serious pain in his right shoulder, upper arm, and muscle."  Am. Compl., ¶ 8.  Plaintiff also requested a permit for a bottom bunk.  Pl.'s Med. Rec., pp. 339.  Defendant reviewed Plaintiff's medical records and concluded that the criteria for such a permit were not met.  Ferrari Decl., ¶ 11.

On June 15, 2012, Plaintiff met with Defendant for the first time and complained of pain in his left hip and right shoulder with "clicking and popping."  Pl.'s Med. Rec., p. 337.  Defendant ordered x-rays of Plaintiff's right shoulder and left hip.  *Id.*  Plaintiff also received

---

[2] Docket Number 107 is a Declaration of Defendant's counsel providing certified copies of Plaintiff's medical records.  Though docketed as a series of different exhibits, the records are sequentially Bates stamped and citation throughout this Report and Recommendation shall be to the Bates stamps provided by Defendant in the form Pl.'s Med. Rec., p. _.

a prescription for Voltaren, a nonsteroidal anti-inflammatory medication. *Id*. The referral for x-rays was submitted on June 18, 2012 and completed on July 27, 2012. Pl.'s Med. Rec., p. 14. The radiologist noted, "mild osteoarthritis at the glenohumeral joint and moderate osteoarthritis at the AC joint." *Id*. at p. 92. On August 20, 2012, Defendant signed the report. *Id*. This report was consistent with Defendant's view that Plaintiff was suffering from arthritis. Ferrari Decl., ¶ 15.

On March 18, 2013, Plaintiff met with Defendant for the second time. Pl.'s Med. Rec., p. 328. The AHR does not contain any notations related to shoulder pain but indicates that Defendant prescribed Voltaren and referred Plaintiff for an orthopedic consult for Plaintiff's complaints related to foot pain. *Id.* Defendant also requested "special issue boots." Pl.'s Med. Rec., pp. 403-04.

On July 15, 2013, Plaintiff met with Defendant for the third time. Pl.'s Med. Rec., p. 326. The AHR indicates that Plaintiff made complaints related to eczema and pain with a decreased range of motion in the right shoulder. *Id.* Defendant ordered a second set of x-rays and prescribed Vitamin D lotion. *Id.* The referral for x-rays was submitted on July 16, 2013 and completed on August 27, 2013.[3] Pl.'s Med. Rec., p. 14. The radiologist noted, "[t]here is mild to moderate osteoarthritis at the glenohumeral joint with subchondral cystic change at the greater tuberosity as well as osteophyte formation at the inferior aspect of the glenohumeral joint. Moderate osteoarthritix is present at the AC joint with small inferiorly

---

[3] The x-rays were delayed due to Plaintiff's absence from the facility. Pl.'s Med. Rec., p. 323.

pointing spurs.  No abnormal soft tissue calcification in present." *Id*. at p. 161.  Defendant reviewed the report.  Ferrari Decl., ¶ 25.

On September 24, 2013, Plaintiff met with Defendant. Pl.'s Med. Rec., p. 322.  The AHR does not contain any notations related to shoulder pain.  *Id*.  Plaintiff complained of left wrist pain extending from his arm to his thumb.  *Id*.  Defendant ordered an electromyogram ("EMG").  *Id*.  The referral for the EMG was submitted on September 24, 2013 and completed on October 29, 2013. Pl.'s Med. Rec., p. 14.  The technician advised Plaintiff that "his nerves were normal."  Am. Compl., ¶ 17.

On July 10, 2014, Plaintiff met with Defendant for the fifth time.  Pl.'s Med. Rec., p. 316.  The AHR indicates that Plaintiff complained of right shoulder pain and trouble hearing. *Id*.  Defendant ordered a consult with an audiologist and prescribed Mobic. Pl.'s Med. Rec., pp. 316 & 393.  In August 2014, October 2014, and November 2014, Defendant referred Plaintiff for follow up consultations with an audiologist. Pl.'s Med. Rec., pp. 388, 389, & 391.  As a result of the consultations, Plaintiff received bi-lateral hearing aids.  *Id*.  O     n September 9, 2014, Defendant examined a 4x5 cm mass on Plaintiff's left anterior shoulder. Pl.'s Med. Rec., p. 315.  Plaintiff claimed that the mass had increased in size over the previous two months and caused him pain.  *Id*.  The AHR lacks any notations related to Plaintiff's right shoulder during this period.  *Id*.  The record does not indicate that Plaintiff requested an MRI, CAT scan, or orthopedic consult.  *Id*.  Defendant recommended a surgical consult and excision of the mass. Pl.'s Med. Rec., pp. 311 & 390.  The referral was submitted on October 22, 2014 and the biopsy was completed on December 3, 2014.  Pl.'s Med. Rec.,

p. 13.  Defendant reviewed the pathology report on December 26, 2014.  Pl.'s Med. Rec., p.

78.  Following the surgery, Defendant prescribed Tylenol with Codeine #3.  Pl.'s Med. Rec.,

p. 308.  Plaintiff was subsequently caught "cheeking" his medication and was transferred to

the Special Housing Unit ("SHU").  Pl.'s Med. Rec., p. 307.  Defendant discontinued the

prescription for Tylenol and prescribed Motrin, 800 mg.  *Id*.

On January 7, 2015, Plaintiff filed a grievance asking for an "arthritis specialist," MRI

and/or CAT scans, and for a different physician.  Dkt. No. 106-7, Buckley Decl., Ex. B at p.

5.  On January 19, 2015, Plaintiff was seen by Dr. Brian Connolly, who referred Plaintiff for

an MRI of his right shoulder.  Pl.'s Med. Rec., p. 72.  On February 9, 2015, the MRI was

performed at Alice Hyde Medical Center.  Pl.'s Med. Rec., p. 12.  The radiologist noted a

"large full thickness tear of the supra and infraspinatus tendons with marked retraction

present.  Small partial tear of the subscapularis tendon with associated medical sublaxtion

of the long head of the biceps tenon suggesting disruption of the biceps pulley/mechanism.

Atrophy of the muscle belies of the supra and infraspinatus."  Pl.'s Med. Rec., p. 88.  On

May 5, 2015, Plaintiff had surgery on his right shoulder.  Pl.'s Med. Rec., pp. 65 & 193.

After surgery, Plaintiff met with Defendant on two occasions. Pl.'s Med. Rec., pp. 62

& 64.  The records indicated that Plaintiff's wound was healing well.  *Id*.  Defendant

prescribed Naproxen, 500 mg.  *Id*.  Upon Plaintiff's request, a few days later, Defendant

provided a prescription for Mobic instead of Naproxen.  Pl.'s Med. Rec., p. 61.

On October 31, 2015, Defendant retired and Plaintiff had no further interaction with

Defendant.  Ferrari Decl., ¶ 51.

## II.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.  Fed. R. Civ. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  *Scott,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc*., 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task

at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord, Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Defendants seek summary judgment on three grounds: (1) there are no disputed issues of material fact precluding summary judgment on Plaintiff's deliberate medical indifference claims; (2) Defendant is entitled to qualified immunity; and (3) Plaintiff's state law claims are barred by N.Y. Correction Law § 24.[4] Dkt. No. 106. In support, Defendant has submitted his own Declaration. Dkt. No. 106-19.

---

[4] In the Memorandum of Law, Defendant notes that the Amended Complaint included a Fourteenth Amendment Due Process claim. *See* Dkt. No. 106-3 at p. 3. Defendant argues however, that this claim did not survive the Court's review. *See id.* Plaintiff did not respond to Defendant's argument. For the reasons set forth in the Decision and Order filed on August 14, 2016, the claims against Defendant are "limited" to Plaintiff's Eighth Amendment medical indifference and state law claims. *See* Dkt. No. 68 at p. 6.

## A.  EIGHTH AMENDMENT

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (*quoting Estelle*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious."  *Farmer*, 511 U.S. at 834 (*quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious.  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  First, the court must determine "whether the prisoner was actually deprived of adequate medical care."  *Id*.  Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition.  *Id*.  The second inquiry is "whether the inadequacy in medical care is sufficiently serious."  *Id*. at 280.  In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious.  *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003).  The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in

degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (*quoting McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone'." *Id.* (*quoting Smith*, 316 F.3d at 185).

The second prong of the Eighth Amendment analysis is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (*citing Farmer*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment

claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance*, 143 F.3d at 702 (*quoting Hathaway v. Coughlin* ("*Hathaway II*"), 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### 1. Objective Prong

"[C]hronic pain can be a serious medical condition." *Price v. Reilly*, 697 F. Supp. 2d 344, 363 (E.D.N.Y. 2010) (citing *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003)).  Courts have found allegations of "severe pain" and "reduced mobility" in the shoulder sufficient to raise issues of fact as to whether a "shoulder injury constitutes a sufficiently serious medical condition to satisfy the objective prong of the deliberate indifference standard." *Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006).  Here, the record before the Court establishes that Plaintiff was repeatedly treated at sick call for complaints of right shoulder pain.  Pl.'s Med. Rec., pp. 67, 68, 316, 326, 330, 332, & 337.  He also underwent x-rays, an MRI, was treated with medication and ultimately underwent surgery.  Pl.'s Med. Rec., pp. 60, 88, 92, 95, 102, & 140-46.  At the very least this raises a question of fact as to whether Plaintiff's shoulder injury was "sufficiently serious" to satisfy the objective prong.  *See Mercer v. APS Healthcare, Inc.*, 2015 WL 5692563, at *9 (N.D.N.Y. Sept. 28, 2015) (treatment involving x-ray of shoulder joint and medication established that his shoulder pain is an objectively serious medical condition for purposes of the Eighth Amendment); *Price v. Reilly*, 697 F.Supp.2d 344, 363 (E.D.N.Y. 2010) (plaintiff's allegations of chronic pain as

a result of a separated shoulder were sufficiently serious to meet the objective component of his deliberate indifference claim).

## 2. Subjective Prong

Plaintiff must also show that Defendant acted with a mental state akin to criminal recklessness. *See Farmer*, 511 U.S. at 836-37. Liberally construed, Plaintiff alleges that Defendant deprived him of constitutionally adequate medical care, failed to order particular tests, refused to provide a bottom bunk pass or medical excuse, and delayed his treatment. *See* Dkt. No. 113. Taken together, these claims fall into two broad categories - an alleged failure to provide essential care and a disagreement with the particular care that was provided to Plaintiff by Defendant

### a. Alleged Failure to Provide Care

Plaintiff contends that Defendant did not treat him in a timely fashion and, as a result, surgery was delayed and unsuccessful. *See* Pl.'s Mem. of Law, p. 4. "Cruel and unusual punishment may consist of prison officials delaying an inmate['s] access to needed medical care." *Kaminsky v. Rosenblum*, 929 F.2d 922, 926 (2d Cir. 1991). In order to rise to the level of deliberate indifference, the defendant must have known of and disregard an excessive risk to the inmate's health or safety. *Wright v. Genovese*, 694 F. Supp. 2d 137, 154 (N.D.N.Y. 2010) (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). "A delay in medical

treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment." *Amaker v. Coombe*, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002)(citing cases).

While Plaintiff claims that he was denied treatment, the record establishes otherwise. Between June 2012 and May 2015, Plaintiff was seen or treated by medical staff, at least one hundred times, for complaints of shoulder pain, hearing loss, foot pain, a mass on his left shoulder, and wrist pain. *See* Pl.'s Med. Rec., pp. 304-37. Throughout that three year time period, Plaintiff made nine documented complaints of "right shoulder pain" and a decreased range of motion in his right shoulder. Pl.'s Med. Rec., pp. 67, 68, 316, 326, 330, 332. Plaintiff's complaints were addressed with medication and x-rays. *See id.* Defendant personally saw Plaintiff in the facility infirmary on numerous occasions. Ferrari Decl. at ¶¶ 12, 17, & 20. During those appointments, Defendant assessed Plaintiff's shoulder and range of motion, ordered multiple x-rays and prescribed several different anti-inflammatory and pain medications. Ferrari Decl., ¶¶ 12, 14, 15, 18, 21, 48, & 49. With regard to the claim that Defendant failed to order additional diagnostic tests or a referral to a orthopedic specialist, Defendant states that there was nothing in Plaintiff's medical history, test results, or other available information that suggest such action was necessary. *Id.* at ¶¶ 19, 22, 32, & 33.

Taken together this record establishes that, contrary to Plaintiff's claims, Defendant

did provide treatment for Plaintiff's right shoulder.  This treatment, while evidently not Plaintiff's preferred course of treatment, belies a claim for deliberate indifference.  *Gay v. Terrell*, 2013 WL 5437045, at *23 (E.D.N.Y. Sept. 27, 2013).  Plaintiff's medical records indicate that the pain in plaintiff's shoulder was a long-term persistent problem having first been reported in the records upon Plaintiff's receipt into DOCCS custody in August 2010. Pl.'s Med. Rec., p. 36 (noting shoulder pain similar to arthritic condition diagnosed by Defendant).[5]  Given this and the nature and course of Plaintiff's treatment the record establishes that Plaintiff's condition was not "life threatening."  Nor does Plaintiff even make such an allegation.  Accordingly, no reasonable factfinder could conclude that there was any delay in Plaintiff's course of treatment that resulted from Defendant's deliberate indifference to Plaintiff's medical needs.  *See Amaker v. Coombe*, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002); *see also Williamson v. Goord*, 2006 WL 1977438, at *21 (N.D.N.Y. July 21, 2006) ("[E]ven if Plaintiff's allegations are true that, [. . . ] Defendants delayed in seeing Plaintiff, failed to provide an MRI for Plaintiff, and failed to refer Plaintiff to an orthopedic specialist [. . . ], those failures did not threaten to produce death or degeneration, or produce extreme pain.").

---

[5] The Court recognizes that Plaintiff disputes that he made such a report at reception.  However, the report is present in the medical records upon which Defendant reasonably relied in assessing Plaintiff's medical history and need for treatment.  That reliance is what is most relevant for consideration of the subjective prong of Plaintiff's Eighth Amendment claim.

**b. Disagreement Regarding Care Provided**

As to this category of claims, Plaintiff alleges that while he met with Defendant several times over the course of three years, Defendant continually provided the "same treatment" and failed to refer him to a specialist. Pl.'s Decl., p. 2. Plaintiff also asserts that Defendant was "disrespectful" and made him feel "indifferent." Pl.'s Dep., pp. 10 & 16. Plaintiff also argues that Defendant was not trained in the filed of orthopedics and was not licensed to dispense pain medication. Pl.'s Mem. of Law, p. 7. As a result of the inadequate care, Defendant allegedly misdiagnosed Plaintiff's condition. *Id.* at p. 8.

Mere "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *Rowland v. Hildreth*, 1993 WL 287646, at *12 (S.D.N.Y. July 27, 1993) (citing *Estelle*, 429 U.S. at 107)) ("[A] medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment."). "Inmates do not have a right to choose a specific type of treatment." *Veloz v. New York*, 339 F.Supp.2d 505, 525 (S.D.N.Y. 2004). The claimed indifference coming from Defendant's failure to order an MRI or other tests or procedures therefore fails to state a claim.

Plaintiff also alleges he was "alienated" and "disrespected" because Defendant was "preoccupied" during their meetings. Pl.'s Dep., pp. 16, 41. Such allegations regarding the bedside manner of medical staff do not amount to a constitutional violation. *See Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) ("Insulting or disrespectful comments directed at

an inmate generally do not rise to th[e] level" of a constitutional violation.); *Arce v. Banks*, 913 F. Supp. 307, 309 (S.D.N.Y. 1996) (finding that the plaintiff's allegation that nurse "yelled" at him did not state a claim as "yelling, cursing, or even race-baiting does not violate any constitutionally protected rights"). Indeed, during his deposition, Plaintiff testified that he does not believe that Defendant "intentionally wanted to hurt [him]." Pl.'s Dep., p. 156. The claim that Defendant was not qualified or licensed to provide treatment does not rise to the level of a constitutional violation. *See Witt v. Bell*, 551 F. App'x 240, 241 (5th Cir. 2014) (holding that allegations premised on medical examinations performed by nurses who did not have, in the plaintiff's opinion, the requisite medical knowledge to treat a broken toe amount to allegations of medical malpractice); *see also Blair v. Schulle*, 43 F.3d 669 (5th Cir. 1994) (dispensing medication without a license is nothing more than an action based on negligence).

Viewing the evidence in a light most favorable to Plaintiff, no reasonable juror could conclude that Defendant was deliberately indifferent to Plaintiff's medical needs. The admissible record detailing Plaintiff's continuous medical treatment belies any claim of deliberate indifference. The undisputed record establishes that from June 2012 until October 2015, Plaintiff was repeatedly treated by DOCCS' medical staff for a myriad of complaints including foot pain, wrist pain, eczema, hearing issues, and right shoulder pain. *See generally* Pl.'s Med. Rec. Upon Defendant's orders and referrals, Plaintiff received medications including Tylenol with Codeine, Voltaren, and Mobic; medical boots; a nicotine patch; and underwent x-rays and an EMG for wrist pain. Pl.'s Med. Rec., pp. 60, 314, 326,

337, 395, 398, 403, & 404.  Defendant recommended consultations with an audiologist and, as a result, Plaintiff received bi-lateral hearing aids.  Pl.'s Med. Rec., pp. 388-394.  Defendant also referred Plaintiff for removal and a biopsy of a mass on his left shoulder.  Pl.'s Med. Rec., p. 390.

Finally, Plaintiff claims that Defendant was deliberately indifferent to his medical needs because he refused to approve Plaintiff's request for a bottom bunk and medical excuse without speaking to or examining Plaintiff.  Pl.'s Decl., pp. 2-3.  An inmate may state an Eighth Amendment claim for improper placement in a top bunk, assuming that the proper subjective standard is met.  *See, e.g., Briel v. Fields*, 2013 WL 1833248, at *3 (E.D.N.Y. May 1, 2013) (finding that the plaintiff's allegations that the defendants were aware of his back condition and recommendation that he be placed in a bottom bunk, but purposely assigned him to a top bunk, stated claim under subjective prong, and collecting).

Plaintiff has failed to present admissible proof of a medical need for a bottom bunk order or medical excuse.  Plaintiff was evaluated after requesting a bottom bunk permit in March 2012 and found not to meet the criteria.  Ferrari Decl., ¶ 11; Pl.'s Med. Rec., p. 339.  Plaintiff's belief that Defendant should have issued an order is nothing more than a dispute over the appropriate course of treatment, which does not state an Eighth Amendment claim.  *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986); *see also Gillespie v. New York State Dep't of Corr. Servs.*, 2010 WL 1006634, at *6 (N.D.N.Y. Feb. 22, 2010) (holding that "the decisions not to give plaintiff a 'lower bunk' pass or order other medical restrictions on plaintiff's work and other activities were all medical judgments and did not deprive plaintiff

of constitutionally adequate medical care").

Given that Plaintiff has failed to show that the Defendants acted with deliberate indifference, his Eighth Amendment claims fail as a matter of law. Thus the Court recommends that the Defendant's Motion for Summary Judgment on this claim be granted.[6]

### B.  State Law Claims

In addition to his claims brought pursuant to 42 U.S.C. § 1983, Plaintiff also asserts state law claims for negligence and medical malpractice.  Dkt. No. 69, Am. Compl. at ¶ 42. Defendant contends that this claim is barred by N.Y. Corrections Law § 24, which states:

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24.

The Second Circuit has held that "the immunity from suit in state court provided to

---

[6] Defendant also seeks summary judgment based on qualified immunity.  Given the Court's recommendation with respect to the merits of the Eighth Amendment claim, the Court also recommends that qualified immunity would serve as an additional basis for granting defendant summary judgment.  Qualified immunity is appropriate when a reasonable official could not have understand that his conduct violated the constitutional right in question. *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014).  While there is no question that Plaintiff had a clearly established right to adequate medical care, given the medical evidence available to Defendant he could not have reasonably have known that the course of treatment described above constituted a denial of Plaintiff's constitutional right to medical care.  Judgment on the ground of qualified immunity is therefore also appropriate.

DOCS employees by § 24 extends to suits for tort claims based on state law against DOCS employees in federal court." *Brown v. Dep't of Corr. Servs.*, 2011 WL 2182775, at \*9 (W.D.N.Y. June 2, 2011) (citing *Baker v. Coughlin*, 77 F.3d 12, 14 (2d Cir. 1996)). Here, Plaintiff has alleged acts that clearly would fall within the scope of Defendant's employment as a state prison official. Thus, Plaintiff is barred from bringing state law claims against the Defendant in his individual capacity in federal court. *See Baker*, 77 F.3d at 15-16. As a result, the Court recommends **DISMISSING** Plaintiff's state law claims.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 106) be **GRANTED** and this case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[7] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**</u> *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

---

[7] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:    February 5, 2018
         Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge